PD-0281-15

PD-0281-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/13/2015 3:10:42 PM
Accepted 3/18/2015 10:19:26 AM
ABEL ACOSTA
CLERK

No. 08-13-00119-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                            Appellant

v.

JEFFREY GENDRON,                                               Appellee

Appeal from El Paso County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

FILED IN
COURT OF CRIMINAL APPEALS

March 18, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellee, Jeffrey Gendron.

*The case was tried before the Honorable Robert S. Anchondo, County Criminal Court at Law No. 2, El Paso County.

*Counsel for Appellee at trial and before the Court of Appeals was Brock Benjamin, 747 E. San Antonio Ave., Ste. 203, El Paso, TX 79901.

*Counsel for the State at trial was Adam R. Loving and Mark W. Spinn, Assistant District Attorneys, 500 E. San Antonio, Room 201, El Paso, Texas 79901.

*Counsel for the State on appeal was Joe Monsivais, Assistant District Attorney, 500 E. San Antonio, Room 201, El Paso, Texas 79901.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

> **Does Texas Transportation Code § 545.060(a), commonly referred to as "failure to maintain a single lane," require an unsafe movement, or is it sufficient that a driver does not drive as nearly as practical entirely within a single lane?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX  (Opinion of the Court of Appeals)

# INDEX OF AUTHORITIES

**Cases**

*Atkinson v. State*, 848 S.W.2d 813 (Tex. App.–Houston [14th Dist.] 1993,
    pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Bass v. State*, 64 S.W.3d 646 (Tex. App.–Texarkana 2001, pet. ref'd) . . . . . . . . . . 4

*State v. Castleberry*, 332 S.W.3d 460 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . 11

*State v. Cerny*, 28 S.W.3d 796 (Tex. App.–Corpus Christi 2000, no pet.).. . . . . 4, 6

*Chase v. State*, 448 S.W.3d 6 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . . . . . 8

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . . 11

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . 7

*Ehrhart v. State*, 9 S.W.3d 929 (Tex. App.–Beaumont 2000, no pet.). . . . . . . . . 4, 5

*Eichler v. State*, 117 S.W.3d 897 (Tex. App.–Houston [14th Dist.]
    2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Fowler v. State*, 266 S.W.3d 498 (Tex. App.–Fort Worth 2008, pet. ref'd). . . . . . . 4

*Gajewski v. State*, 944 S.W.2d 450 (Tex. App.–Houston [14th Dist.] 1997,
    pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*State v. Gendron*, 08-13-00119-CR, 2015 Tex. App. LEXIS 1334 (Tex.
    App.–El Paso Feb. 11, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gordon v. State*, 05-95-01757-CR, 1997 Tex. App. LEXIS 1562 (Tex.
    App.–Dallas Mar. 27, 1997, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hernandez v. State*, 983 S.W.2d 867 (Tex. App.–Austin 1998,
    pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-7, 10

*Jaganathan v. State*, 438 S.W.3d 823 (Tex. App.–Houston [14th Dist.] 2014,
    pet. granted). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Learning v. State*, 227 S.W.3d 245 (Tex. App.–San Antonio 2007, no pet.). . . . . . 6

*Lothrop v. State*, 372 S.W.3d 187 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 9-10

*Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . 8

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010). . . . . . . . . . . . . . 4, 10

*Prudholm v. State*, 333 S.W.3d 590 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . 7

*Sparks v. State*, 07-00-0021-CR, 2000 Tex. App. LEXIS 7248 (Tex. App.–Amarillo Oct. 26, 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Tarvin*, 972 S.W.2d 910 (Tex. App.–Waco 1998, pet. ref'd). . . . . . . . . 4, 6

*Terry v. Ohio*, 392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes and Rules**
Tex. Gov't Code § 311.016(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Gov't Code § 311.016(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. Gov't Code § 311.016(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. Penal Code § 46.035(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Penal Code § 49.04(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Tex. Rev. Civ. Stat. art. 6701d § 60(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. R. App. P. 66.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Transp. Code § 1.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. Transp. Code § 545.058. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Transp. Code § 545.060(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Tex. Transp. Code § 547.302(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

No. 08-13-00119-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                                Appellant

v.

JEFFREY GENDRON,                                                   Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. The statute at issue has remained largely unchanged since 1947 but has yet to be interpreted by this Court. It is a common basis for traffic stops, and its treatment by many courts of appeals is illustrative of a pattern of ignoring the plain language of Transportation Code offenses.[1]

---

[1]    *See Jaganathan v. State*, PD-1189-14, submitted 2/11/15, in which this Court granted review of the following: "Does driving in the left lane while not 'in the process of passing' after passing a

1

Conversation will help the Court give law enforcement, lawyers, and judges valuable guidance regarding reasonable suspicion of these offenses.

## STATEMENT OF THE CASE

Appellee was stopped for failing to maintain a single lane and charged with driving while intoxicated with a blood alcohol level of over .15.[2] The trial court suppressed the evidence because appellee's departure from his lane was not unsafe.

## STATEMENT OF PROCEDURAL HISTORY

On February 11, 2015, the court of appeals affirmed the trial court's suppression.[3] No motion for rehearing was filed.

## GROUND FOR REVIEW

**Does Texas Transportation Code § 545.060(a), commonly referred to as "failure to maintain a single lane," require an unsafe movement, or is it sufficient that a driver does not drive as nearly as practical entirely within a single lane?**

## ARGUMENT AND AUTHORITIES

Transportation Code section 545.060, entitled "Driving on Roadway Laned for Traffic," provides, in part, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) *shall* drive as nearly as practical entirely within

---

'Left Lane for Passing Only' sign provide reasonable suspicion of a traffic violation?"

[2] TEX. PENAL CODE § 49.04(d).

[3] *State v. Gendron*, 08-13-00119-CR, 2015 Tex. App. LEXIS 1334 (Tex. App.–El Paso Feb. 11, 2015) (not designated for publication).

a single lane; *and* (2) *may not* move from the lane *unless* that movement can be made safely."[4]  Officer Melendez saw appellee drift out of his lane and there is no indication that remaining would have been impractical.[5]  Did Officer Melendez have reasonable suspicion of a violation of section 545.060(a)?

The court of appeals held that he did not.  "To prove one violates this provision, its text requires the State to show that a lane line encroachment creates an unsafe situation[,]" and there was no "indisputable visual evidence of dangerousness which might justify overturning the trial court's [ruling]."[6]  Unfortunately, this departure from the statute's plain language is so common that a published opinion was deemed unnecessary.  And while it might be easy to overlook the importance of defining a single traffic offense, it is difficult to ignore the seriousness of the offenses that go unpunished as a result.  For example, appellee had a blood alcohol level over twice the legal limit and a gun in his possession.[7]  The meaning of this statute is an important question of state law that has not been, but should be, settled by this Court.[8]

---

[4]  TEX. TRANSP. CODE § 545.060(a) (emphasis added).  All references to sections are to the Transportation Code unless otherwise stated.

[5]  *See* Defense Ex. 2 (video).

[6]  Slip op. at 8, 11.

[7]  Slip op. at 1, 2 n.2 (citing TEX. PENAL CODE § 46.035(d)); 1 RR 14 (.19).  *See also Eichler v. State*, 117 S.W.3d 897, 898-99 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (446 grams of marijuana and 335 grams of methamphetamine in a cracker box in his vehicle).

[8]  TEX. R. APP. P. 66.3(c).

<u>Varying interpretations</u>

As this Court has recognized, "Courts have held that a violation of Section 545.060 occurs only when a car fails to stay within its lane *and* such movement is not safe or is not made safely."[9]  This view is common.[10]  But it has received little scrutiny; no court of appeals has ever conducted a thorough analysis of section 545.060(a) or its predecessor, TEX. REV. CIV. STAT. art. 6701d § 60(a).[11]

Most cases that set out the elements of art. 6701d § 60(a) do so in a single sentence without citation to any authority, and only to compare them to the elements of driving while intoxicated.  *Atkinson v. State*, often relied upon for this point, is typical: "The elements of failure to drive in a single marked lane are: (1) a person (2) drives or operates (3) a motor vehicle (4) within a single marked lane, and (4) moves

<hr>

[9]  *Mahaffey v. State*, 316 S.W.3d 633, 640 (Tex. Crim. App. 2010) (citing *State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.–Corpus Christi 2000, no pet.), and *State v. Tarvin*, 972 S.W.2d 910, 910-11 (Tex. App.–Waco 1998, pet. ref'd)) (emphasis added).

[10]  *See, e.g., Fowler v. State*, 266 S.W.3d 498, 502 (Tex. App.–Fort Worth 2008, pet. ref'd) ("Although the statute has two subparts, it does not create two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so."); *Bass v. State*, 64 S.W.3d 646, 650 (Tex. App.–Texarkana 2001, pet. ref'd) ("In other words, a violation of Section 545.060(a) occurs only when a vehicle fails to stay within its lane and that movement is not safe or is not made safely."); *Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.–Beaumont 2000, no pet.) ("As the record contains no evidence the movement was unsafe or dangerous, an actual traffic violation did not occur."); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.–Austin 1998, pet. ref'd) ("with respect to a vehicle's straying over a lane marker, a traffic violation occurs only when the vehicle's movement is in some way unsafe."); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.–Houston [14th Dist.] 1997, pet. ref'd) ("weaving between traffic lanes" is "not an inherently illegal act").

[11]  A Lexis search revealed no cases in which "*Boykin*," "statutory construction," "Code Construction Act," "absurd," or "plain language" is used to discern their meaning.  Only one, discussed below, asserts the language at issue is "ambiguous."

from that lane without first ascertaining that such movement can be made with safety."[12] But some unpublished cases, with a similar lack of analysis, held that the failure to drive as nearly as practical within a single lane was dispositive of probable cause.[13]

*Gajewski*, an oft-cited case on section 545.060, actually supports either interpretation. On one hand, it says "weaving between traffic lanes" is "not an inherently illegal act."[14] On the other, it "decline[d] to interpret section 545.060 so as to permit a driver to weave throughout all lanes of traffic so long as no other vehicles are in the immediate vicinity. . . . The fact that no other cars were around appellee at the time he was weaving may be a defense to a traffic citation."[15]

More recently, some courts have had no problem finding at least probable cause based on the failure to drive as nearly as practical within a single lane.[16] Yet others appear to work around the prevailing interpretation by relying on the inherent

[12]    848 S.W.2d 813, 815 (Tex. App.–Houston [14th Dist.] 1993, pet. ref'd). *Atkinson* is cited in a number of the cases relied upon by the court of appeals in this case. *See Eichler*, 117 S.W.3d at 900; *Ehrhart*, 9 S.W.3d at 930-31.

[13]    *See*, *e.g.*, *Gordon v. State*, 05-95-01757-CR, 1997 Tex. App. LEXIS 1562 *5-7 (Tex. App.–Dallas Mar. 27, 1997, pet. ref'd) (not designated for publication).

[14]    944 S.W.2d at 452.

[15]    *Id*. at 453.

[16]    *See Sparks v. State*, 07-00-0021-CR, 2000 Tex. App. LEXIS 7248, 5-6 (Tex. App.–Amarillo Oct. 26, 2000, no pet.) (not designated for publication) ("Furthermore, section 545.060(a)(1) . . . requires one driving a vehicle to do so 'as practical entirely within a single lane.' Therefore, upon witnessing a violation of section 545.060(a)(1), Bratcher had probable cause and the legal authority to stop appellant.").

unsafety of weaving.[17]  And, as numerous courts of appeals have pointed out, some of the cases most commonly cited for the prevailing interpretation of the law, including those cited by this Court in *Mahaffey*, do not actually rely on that interpretation because all the weaving was done within a single lane.[18]

The prevailing reasoning is flawed

The only case that attempts to explain the conventional wisdom is *Hernandez*. It claimed that "the history of the relevant statutory provision seems to indicate that, with respect to a vehicle's straying over a lane marker, a traffic violation occurs only when the vehicle's movement is in some way unsafe."[19]  After comparing the former and current versions of the statute, it concluded:

> We believe the statutory language shows a legislative intent that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely.  Neither the current provision in the Transportation Code nor the original statute creates two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so.[20]

---

[17]  *See, e.g.*, *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.–San Antonio 2007, no pet.) ("Here, Learning veered not only within his own lane but also into an adjacent lane, and he did so not once but four times.  We conclude that such driving behavior warranted a reasonable suspicion that Learning was not moving from one lane to another safely and that he was therefore violating Section 545.060(a).").

[18]  *See Tarvin*, 972 S.W.2d at 911 ("The [trial] court's finding that Tarvin never left his lane of traffic is supported by the record as that phrase could rationally be defined."); *Cerny*, 28 S.W.3d at 799-801 ("the testimony establishes appellee was weaving somewhat within his own lane of traffic."). *Tarvin* and *Cerny* are both cited by the court of appeals in this case.  Slip op. at 8-9.

[19]  *Hernandez*, 983 S.W.2d at 871.

[20]  *Id*. at 871 (emphasis in original).

Its only support was *Atkinson*'s conclusory statement of the elements of art. 6701d

§ 60(a) combined with its view that "the very vagueness of the requirement that the

operator of a vehicle drive within a single lane 'as nearly as practical' indicates that

the legislature did not intend for the initial clause of the statute to create a discrete

offense apart from some element of unsafety."[21]  In other words, the court dispensed

with the "as nearly as practical" language in order to avoid creating two separate

offenses.  This is a straw man.  There is no argument that separate offenses are

contained within section 545.060(a) or that multiple convictions may be had.  Rather,

a reading of the plain language shows that a single offense can be committed in

multiple ways.

The statute requires impracticality

Ignoring "as nearly as practical" disregards the fundamental presumption that

each word and phrase in a statute has a purpose and so should be given effect if

reasonably possible.[22]  It also misses the point of the specific language used.  "'Shall'

---

[21]    *Id*.  The court suggested the use of "practicable" instead of "practical" would cure the alleged
infirmity: "The latter term [practicable] has a somewhat more definite meaning: 'capable of being
accomplished; feasible; possible,' while the former term [practical] is more ambiguous: 'manifested
in practice; capable of being put to good use.'" *Id*. (citing Bryan A. Garner, A Dictionary of Modern
Legal Usage 678 (2d ed. 1995)).  But they are commonly treated as synonyms and, in any event, the
language used benefits the driver because it can be impractical to maintain one's lane even though
it is possible.

[22]    *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011); *Dowthitt v. State*, 931
S.W.2d 244, 258 (Tex. Crim. App. 1996).

imposes a duty."[23] "'May not' imposes a prohibition and is synonymous with 'shall not.'"[24] That there is one "shall" clause and one "may not" clause separated by the conjunction "and" is near-conclusive evidence that the legislature intended them to have independent significance.[25] Thus, the offense commonly referred to as "failure to maintain a single lane" can be committed in two ways—1) straying from within a lane when it would not have been impractical to remain, or 2) impracticality notwithstanding, straying therefrom in an unsafe manner. This is not a foreign concept in the Transportation Code. For example, section 547.302(a) requires a vehicle to "display each lighted lamp and illuminating device . . . : (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead."[26] It could not be reasonably argued that a driver could lawfully ignore subpart (1) and not turn his lights on at night if the moon made his vehicle clearly discernible at 1,000 feet. Yet that is the analogous result of the prevailing view of

---

[23] TEX. GOV'T CODE § 311.016(2), made applicable by TEX. TRANSP. CODE § 1.002; *see also Luquis v. State*, 72 S.W.3d 355, 363 & n.17 (Tex. Crim. App. 2002) ("The use of the word 'shall' generally indicates a mandatory duty.").

[24] TEX. GOV'T CODE § 311.016(5).

[25] *See Chase v. State*, 448 S.W.3d 6, 22-23 (Tex. Crim. App. 2014) ("The use of the word 'and' between the part of the statute that authorizes the killing of a dog and the part that immunizes the actor from civil liability indicates that the legislature intended to provide a defense to both criminal and civil liability . . . .").

[26] TEX. TRANSP. CODE § 547.302(a) ("Duty to Display Lights").

8

section 545.060(a).

Comparison with this Court's construction of a similar statute, TEX. TRANSP. CODE § 545.058, is helpful. Section 545.058(a) provides: "An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only [for seven permissible reasons.]" This Court held, "The only way to give meaning to every word of Section 545.058(a) while using common meanings and avoiding redundancies is to read 'necessary' in the context of the seven permissible reasons."[27] For example, "if a driver wanted to allow a vehicle driving faster to pass and it was necessary to drive on an improved shoulder in order to do so, Section 545.058(a)(5) allows the driver to do that so long as it may be done safely."[28] "[This] shows that the offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of achieving one of the seven approved purposes, or driving on the improved shoulder could not have been done safely."[29]

Section 545.060(a)(1), which is mandatory, should be construed at least as

---

[27] *Id.*

[28] *Lothrop v. State*, 372 S.W.3d 187, 191 (Tex. Crim. App. 2012).

[29] *Id.*

strictly as the permissive section 545.058(a).[30]    Neither 545.060(a)(1) nor

545.060(a)(2) renders the other "wholly redundant,"[31] especially when the context of

this offense is considered.  Section 545.060 applies when straying from within a lane

does not result in a completed lane change, *i.e.*, "swerves and drifts."[32]  It is relatively

easy to imagine circumstances under which it might be impractical to maintain one's

lane but also unsafe to swerve or drift out of it.  For example, encountering a series

of large potholes or a turtle[33] in your lane when you are moving at 70 m.p.h. and

surrounded by traffic.  And it is not absurd to require maintenance of a single lane

even when none of these circumstances exist.

Conclusion

The court of appeals quoted *Hernandez* when it stated, "[w]e cannot turn a

blind eye to common sense and experience.  There are myriad reasons why the wheels

of a vehicle might drift slightly across a lane marker a single time."[34]  This suggests

that a violation cannot or should not lie when there may be an innocent explanation.

---

[30]    *See* TEX. GOV'T CODE § 311.016(1) ("'May' creates discretionary authority or grants permission or a power.").

[31]    *Lothrop*, 372 S.W.3d at 190 n.7.

[32]    *Mahaffey*, 316 S.W.3d at 640 n.35.

[33]    *Id*. at 640.

[34]    Slip op. at 8-9 (quoting *Hernandez*, 983 S.W.2d at 870) (alteration in *Gendron*).

10

But the possibility of an innocent explanation does not vitiate reasonable suspicion.[35] It is no less reasonable or just to detain someone for swerving or drifting on an empty road than it is to detain someone for repeatedly walking back and forth in front of a store window or driving slowly around a parking lot leering at people and into cars.[36] And it is no reason to disregard the plain language of the statute.

Section 545.060(a) has two numbered subparts stated in the conjunctive. If, as many courts of appeals have agreed, the only relevant inquiry is whether movement from the lane was done safely, one half of the statute is rendered moot. It is unclear whether this results from inartful statutory analysis or is another example of selective construction based on perceived policy considerations.[37] What is clear is that intoxicated drivers and felons detained in accordance with the plain text of Transportation Code provisions are escaping justice as a result. This Court should take the opportunity to decide, for the first time, whether the plain language of section 545.060(a) means what it says.

---

[35] *State v. Castleberry*, 332 S.W.3d 460, 468 (Tex. Crim. App. 2011).

[36] *See Terry v. Ohio*, 392 U.S. 1, 6 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 909-10 (Tex. Crim. App. 2011).

[37] *See* PD-1189-14, *Jaganathan v. State*, submitted 2/11/15, in which the court of appeals found no reasonable suspicion after considering, *inter alia*, "whether the defendant . . . frustrated the purpose of the 'Left Lane for Passing Only' signs, which is ostensibly to promote safety and prevent undue delay caused by slower moving vehicles." *Jaganathan v. State*, 438 S.W.3d 823, 828 (Tex. App.–Houston [14th Dist.] 2014, pet. granted).

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, and that the decision of the Court of Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

　/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 3,939 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 13th day of March, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Brock Benjamin
747 E. San Antonio Ave., Ste. 203
El Paso, TX 79901
brock.benjamin@gmail.com

Joe Monsivais
Assistant District Attorney
500 E. San Antonio, Room 201
El Paso, Texas 79901
JoMonsivais@epcounty.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**APPENDIX**



THE STATE OF TEXAS,  §

Appellant,  §

v.  §

JEFFREY GENDRON,  §

Appellee.  §

§

§

No. 08-13-00119-CR

Appeal from the

County Criminal Court at Law
Number Two

of El Paso County, Texas

(TC# 20130C00284)

## **O P I N I O N**

The Fourth Amendment to the United States Constitution protects one in their home and person from unreasonable searches and seizure; while driving an automobile it protects one from being stopped unless the police can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop.[1] In this case, Jeffrey Gendron, was pulled over and subsequently arrested for driving while intoxicated. A breath sample taken after the stop revealed twice the legal limit. Based on a motion to suppress that breath sample, the trial court granted his suppression motion, finding the stop to be illegal. The stop, and what the police officer saw, is fully documented on the police cruiser's dash-cam video which is before us. The State argues that based on that dash-cam footage, this Court can find

---

[1] *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) ;U.S. Const. amend. IV.

that the stop was justified and overturn the trial court's ruling to the contrary. For the reasons noted below, we decline to do so.

## FACTUAL SUMMARY

Appellee was indicted for driving while intoxicated with a blood alcohol level over 0.15. TEX.PENAL CODE ANN. § 49.04(d)(West Supp. 2014).[2] The charge arose out of an arrest in the early morning of January 3, 2013. Officer Raul Melendez was patrolling Interstate 10's three west bound lanes near mile marker 28.[3] He drove up behind Appellee who was west bound in the middle lane. According to Officer Melendez's testimony at the suppression hearing, Appellee's vehicle was "swerving, at which time--it was in the middle lane, swerved from the middle lane to the inside, back, and then to the outside lane, at which time I conducted a traffic stop . . . ." He testified to following Appellee for about two miles. It was 2:40 a.m. in the morning.

On cross examination, Officer Melendez embellished that Appellee swerved out his lane "[a]pproximately five times." He then agreed that Appellee crossed the Interstate's white divider lane lines a total of five times. Appellee's attorney then played the police cruiser's dash-cam video. The video shows Officer Melendez's vehicle quickly moving through traffic. Appellee's vehicle is first visible in the middle lane at the time stamp 2:39:39 on the video. As Officer Melendez's cruiser comes up behind Appellee's pick-up truck, the truck is side by side with another vehicle which is in the far right hand lane. Appellee's truck can be seen drifting towards that vehicle, but it never leaves its lane. Appellee's truck then moves ahead of that other vehicle

---

[2] In a separately numbered cause, Appellee was also apparently charged with possession of a firearm while intoxicated. An inventory search of his car revealed a pistol stored in his glove compartment and Appellee has an conceal and carry permit. TEX.PENAL CODE ANN. § 46.035(d)(West Supp. 2014)("A license holder commits an offense if, while intoxicated, the license holder carries a handgun under the authority of Subchapter H, Chapter 411, Government Code, regardless of whether the handgun is concealed."). Appellee's suppression motion does not address that cause number and it is not before us.

[3] He was part of a DWI task force and had been on the police force for over seven years by time of this stop.

2

and only Appellee's truck is visible in the west bound lanes. His truck then drifts to the left and right but stays in its lane. At one point the passenger side wheels appear to get all the way onto to lane lines to his right. Officer Melendez's cruiser comes within a few car lengths of Appellee's truck. Appellee's truck then crosses over partially into the far left lane. His driver's side wheels completely cross over the white striped lines.

At that point, Officer Melendez's vehicle begins weaving over the lane lines. He testified that he did this with his back lights illuminated to alert traffic behind him that he was going to make a stop. The reflection of his front flashing lights becomes visible at the time stamp 2:40:51 on the video, making the total elapsed time between when Appellee's vehicle is first in view, until when he is signaled to pull over, one minute and twelve seconds. Officer Melendez acknowledged that Appellee promptly pulled over.[4]

After viewing the dash cam video, Office Melendez acknowledged that Appellee's vehicle only crossed the lane lines "once or twice," rather than the five times he originally testified to. He maintained that Appellee's weaving created a danger to other vehicles, but conceded that the traffic was light and there were no other vehicles next to Appellee's when it actually crossed the lane lines. At other points in his testimony, he agrees that other cars were not endangered by the movement of Appellee's vehicle.

Following the hearing, the trial court signed an order granting the motion to suppress. The trial court made oral findings of fact which were later reduced to an order. The relevant written findings include:

---

[4] The video goes on to show the administration of the field sobriety test, which Appellee failed. Appellee admitted to having had a cocktail at a night club. The officer testified at the hearing that Appellee had bloodshot eyes, smelled of alcohol, and had slurred speech. The breath sample allegedly tested at 0.19. We think it beyond dispute that once the officer interacted with Appellee following the stop, he had probable cause to further detain and then arrest Appellee for driving while intoxicated. The sole question before us is the justification for the initial stop.

3

FINDINGS OF FACT

. . .

2. The Court further finds that at or about 2:40 a.m., the officer testified that he observed a vehicle in front of him and testified that the vehicle was swerving at least five times from the middle lane, then into the inside lane, then to the outside lane and back into the middle lane for approximately two miles;

3. The Court further finds that the officer testified that the traffic activity was not heavy, that he turned his back lights on first to warn the other drivers behind him that the [sic] was making a traffic stop, and started to swerve himself in order to alert the other drivers to back off;

4. The Court further finds that the officer testified that the defendant was swerving from one lane to another and did place other vehicles in danger.

CONCLUSIONS OF LAW

1. The Court concludes that the defendant did not swerve five times from lane to lane, and only noticed a slight encroachment into the inside lane;

2. The Court finds that there was not heavy traffic and did not place other drivers in danger;

3. The Court further concludes that when the officer's overhead lights went on, the defendant immediately signaled to change lanes and proceeded safely toward his stop, without causing any danger to other drivers;

4. The Court further concludes that the dash cam video was in direct conflict with the police officer's testimony regarding how many times the defendant swerved into the lanes, and finds that his testimony is not credible and that there are no specific articulable facts for the officer to have reasonable suspicion or probable cause that the defendant was committing any criminal activity or that he was intoxicated.

**STANDARD OF REVIEW**

Appellant was stopped without a warrant and without his consent; accordingly, the State had the burden of proving the reasonableness of the stop. *See Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Young v. State*, 133 S.W.3d 839, 841 (Tex.App.--El Paso 2004, no pet.). A peace officer's decision to stop an automobile passes Fourth Amendment scrutiny when the officer has a reasonable articulable suspicion that criminal activity may be afoot. *See Terry*

4

*v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific articulable facts which lead him to conclude that the person is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). An officer may lawfully stop and detain a person for a traffic violation that the officer witnesses. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App. 1992); TEX.CODE CRIM.PROC.ANN. art. 14.01(b)(West 2005)("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX.TRANSP.CODE ANN. § 543.001 (West 2013)("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). The decision to stop an automobile is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Walter v. State,* 28 S.W.3d 538, 542 (Tex.Crim.App. 2000).

We review a trial court's decision to grant or deny a motion to suppress for an abuse of discretion. *Montanez v. State*, 195 S.W.3d 101, 108 (Tex.Crim.App. 2006). An abuse of discretion occurs when the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App. 1992); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). As a general rule, appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, particularly when those fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). "The winning side is afforded the 'strongest legitimate view of the evidence' as well as all reasonable inferences that can be derived from it." *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013), *quoting State v. Weaver,* 349 S.W.3d 521, 525 (Tex.Crim.App. 2011).

We also afford the same amount of deference to a trial courts' rulings on the application of the law to the facts--so called mixed questions of law and fact--if resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.*

The intersection of these standards of review with the advent of dash-cam video has proven a thorny issue. In *Carmouche v. State,* 10 S.W.3d 323 (Tex.Crim.App. 2000), the Court declined to give that "almost total deference" to a trial court's determination that a defendant voluntarily consented to a search when "the videotape present[ed] indisputable visual evidence contradicting essential portions of [the officer's] testimony." *Id.* at 332. But six years later in *Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App. 2006), the Court of Criminal Appeals reiterated that even with a videotape, the trial court's determination of historical facts is entitled to almost total deference. *Id.*; *see also Carter v. State,* 309 S.W.3d 31, 40 (Tex.Crim.App. 2010)(applying deferential standard to trial court's review of video of interrogation); *Manzi v. State*, 88 S.W.3d 240, 241 (Tex.Crim.App. 2002)(applying deferential standard to trial court review of affidavits). *Montanez* expressly rejected the proposition that a video changes the deferential standard of review. *Id.* at 108-09. One rationale for that holding is that trial courts are vested with the function of determining historical facts; the fortuity of a video should not entitle the loser, whoever that may be, to a *de novo* review by three, or nine, more sets of eyes. Reading the cases together, we glean that the trial court's factual determinations are entitled to almost total deference so long as they are supported by the record, meaning that the video does not indisputably negate the trial court's findings. *See State v. Houghton,* 384 S.W.3d 441, 446 (Tex.App.--Fort Worth 2012, no pet.)(the reviewing court is to give almost total deference to the trier of fact's factual determinations unless the video recording indisputably contradicts those

6

findings).

The State brings one issue on appeal contending that the trial court abused its discretion in granting the motion to suppress based on an illegal traffic stop. According to the State, the officer had reasonable suspicion to pull Appellee over for suspicion of DWI based on his weaving in and out of his lane, the early morning hour that he was driving, and the officer's training and experience. Acknowledging the *Montanez* opinion, the State counters that: "In this case, however, the video-recording evidence is not subject to any interpretation, in that it shows that the appellee swerving within the lane and outside the lane, on the freeway, in the dark, early morning hours. No further interpretation of this indisputable visual evidence was necessary, or even possible."

Appellee responds in part that this was not a stop based on suspicion of DWI, but one based on a traffic offense, and merely crossing a stripped lane line is not an offense unless it endangers other drivers. Based on the trial court's finding that other drivers were not endangered, there could be no reasonable basis to stop and ticket Appellee for crossing a lane line. The State's brief conversely claims that "Off. Melendez did not stop the appellee for a violation of the traffic code, but for his swerving within the lane and outside of the lane, and the time of night." At the suppression hearing, however, the officer testified that the swerving constituted a traffic offense, and he never contended the stop was based on a suspicion of DWI. Ultimately, the officer's subjective intent at the time is not determinative. The Court of Criminal Appeals has held that a stop made for the wrong reason is still permissible, so long as the officer actually had before him facts which would have justified the stop for a good reason. *Duran*, 396 S.W.3d at 570. Accordingly, we analyze the stop both as one for a traffic offense, and one for

7

suspicion of DWI.

*Justifiying The Stop Based On A Traffic Offense*

"If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State,* 15 S.W.3d 146, 151 (Tex.App.--Texarkana 2000, pet. ref'd). The State was not required to show that a traffic offense was actually committed, but only that the officer reasonably believed a violation had occurred. *Tex. Dep't of Pub. Safety v. Fisher,* 56 S.W.3d 159, 163 (Tex.App.--Dallas 2001, no pet.); *accord Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001); *see also Cook v. State,* 63 S.W.3d 924, 929 n.5 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd)(noting that there is no requirement that a traffic regulation is actually violated).

Improperly crossing a lane is prohibited by TEX.TRANSP.CODE ANN. § 545.060(a)(West 2011). The provision requires a driver on a roadway with clearly marked lanes to "drive as nearly as practical entirely within a single lane" and "not move from the lane unless that movement can be made safely." *Id.* To prove one violates this provision, its text requires the State to show that a lane line encroachment creates an unsafe situation. In *Hernandez v. State,* a police officer stopped the defendant after observing him "drift" eighteen to twenty-four inches from the right lane into the adjacent left lane of traffic. 983 S.W.2d 867, 868-69 (Tex.App.-- Austin 1998, pet. ref'd). The court rejected the State's argument that the facts available to the officer gave rise to a reasonable suspicion that the defendant had violated Section 545.060(a). *Id.* at 870. The State failed to show that Hernandez's movements were unsafe or dangerous. *Id.* at 870-71. There were very few vehicles around, and Hernandez did not cause any problems for any of them. *Id.* at 868. The officer felt that the lane change was unsafe only because he was concerned about the driver's well-being. *Id.* But based only on the "drift" across the lane line, the court concluded "[w]e cannot turn a blind eye to common sense and experience. There are

myriad reasons why the wheels of a vehicle might drift slightly across a lane marker a single time." *Hernandez*, 983 S.W.2d at 870. The officer admitted that the lane change was the only reason for the stop.[5]

This same requirement of some evidence of danger to the driver or others has been accepted by other courts, and its absence has resulted in the ensuing stop being found improper. *Fowler v. State,* 266 S.W.3d 498, 499 (Tex.App.--Fort Worth 2008, pet. ref'd)(no reasonable suspicion to stop vehicle at 12:25 a.m. that drifted over lane line by one tire width once and touched the lane line two other times); *Eichler v. State,* 117 S.W.3d 897, 898 (Tex.App.-- Houston [14th Dist.] 2003, no pet.)(holding no reasonable suspicion when car crossed lane line on interstate in light traffic at 12:30 a.m.); *Bass v. State,* 64 S.W.3d 646, 651 (Tex.App.-- Texarkana 2001, pet. ref'd)(no reasonable suspicion to stop defendant who swerved within his lane line, and crossed it some unknown number of times over two to three mile stretch); *State v. Cerny,* 28 S.W.3d 796, 799 (Tex.App.--Corpus Christi 2000, no pet.)(holding no reasonable suspicion to stop defendant existed when car "just barely" swerved onto shoulder of lane of oncoming traffic, then crossed over shoulder line three to four times); *State v. Arriaga,* 5 S.W.3d 804, 807 (Tex.App.--San Antonio 1999, pet. ref'd)(van drifting toward center divider--but within lane--two to seven times near nightclub around 1:50 a.m.); *State v. Tarvin,* 972 S.W.2d 910, 912 (Tex.App.--Waco 1998, pet. ref'd)(holding no reasonable suspicion existed when car drifted over outside shoulder line two to three times at 2:00 a.m. near nightclub).

*Hernandez* is not without its critics. *See Cook*, 63 S.W.3d at 931 (Brister, C.J., concurring)("I believe it is time to stop distinguishing *Hernandez* and start disagreeing with it.").

---

[5] Hernandez was charged with DWI based on the clues the officer picked up after he made the stop. But importantly, the officer never testified the "drift" he observed lead him to believe that Hernandez was intoxicated. *Id.* at 870. For instance, the officer did not testify that, based on his experience, he subjectively suspected appellant of being intoxicated. *Id.* Nor did he testify that anything about the objective circumstances--time, location, and the vehicle's movement--would have led a reasonable officer to suspect the driver of being intoxicated.

This Court has in fact distinguished the *Hernandez* decision on any number of occasions, notably when there was other evidence in addition to the lane encroachment which justified a reasonable suspicion the driver was intoxicated or impaired. *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 703 (Tex.App.--El Paso 2009, no pet.)(agreeing that lane change without evidence of dangerousness was not justification for stop, but additional violation of driving on the shoulder violation supported stop); *Lara v. State*, No. 08-07-00350-CR, 2009 WL 4922473, at *5 (Tex.App.--El Paso Dec. 22, 2009, no pet.)(not designated for publication)(stop based on suspicion of DWI for lane violation and hitting curb when turning); *Rodriguez v. State*, No. 08-04-00083-CR, 2005 WL 1315003, at *4 (Tex.App.--El Paso June 2, 2005, no pet.)(not designated for publication)(lane changes without signaling and almost hitting a construction barrel supported reasonable suspicion of DWI); *Galindo v. State*, No. 08-03-00236-CR, 2004 WL 1903404, at *3 (Tex.App.--El Paso Aug. 26, 2004)(mem. op., not designated for publication)(driver who crossed lane line, was driving well below speed limit, and almost hit concrete abutment several times, created reasonable suspicion of DWI); *Waltmon v. State*, No. 08-03-00317-CR, 2004 WL 1801793, at *6 (Tex.App.--El Paso Aug. 12, 2004, pet. ref'd)(not designated for publication)(called in tip that driver was weaving "all over the road" confirmed by two officers who observed multiple unsignaled lane changes, pulled over for suspicion of DWI). But these kinds of distinguishing facts are absent here, and the State did not develop a record below that the kind of weaving we see on the video is necessarily indicative of impaired driving.

The trial court here explicitly made the finding that other vehicles were not endangered by Appellee. The trial court's finding of an absence of dangerousness is at least in part bound up in Officer Melendez's credibility and demeanor with respect to the other traffic that night. On

10

the video we can observe what was in front of Officer Melendez's vehicle because the dash-cam is pointed in that direction, but we have no view of what was to the rear of his car. Officer Melendez's testimony about the danger to other vehicles was clearly conflicting. At times he unambiguously states Appellee's vehicle was a danger to other vehicles, but at other junctures, he testifies to just the opposite.[6] The trial judge was there to see the officer on the stand. Abiding by *Guzman*'s teaching that we should give almost total deference to the trial court findings, there is no finding of dangerousness which is an element of the traffic offense under Section 545.060. We cannot say that a vehicle crossing a divided lane line on a single instance, and touching the lane once, when there are no other vehicles documented on the video, constitutes the kind of indisputable visual evidence of dangerousness which might justify overturning the trial court's application of disputed facts to the law.

*Justifying The Stop Based On Suspicion Of DWI*

The State primarily attempts to justify this stop based on the officer's suspicion of DWI. Appellee first responds that the officer claimed this was a stop based on a traffic offense, and that the State cannot rely on a justification never claimed by the officer. Nonetheless, if there was a correct basis for the stop of which the officer knew or could have known, the mere fact the officer subjectively believed the stop was justified for another reason will not render the stop illegal. *Whren*, 517 U.S. at 810, 116 S.Ct. at 1772; *Duran*, 396 S.W.3d at 570.

But if this was an investigatory stop for suspicion of DWI, the State is hampered by the trial court's finding that Officer Melendez lack credibility based on his embellishment of certain facts which are contradicted by the video. In other words, the State cannot ask us to rely on the officer's years of training and experience in interpreting the facts shown on the video when the trial court found the officer's testimony unreliable. The State is also hampered by the fact that

---

[6] Nor did the Officer claim he was pulling Appellee over as a danger to himself.

Officer Melendez never testified below that the kind of drift he observed in Appellee's driving is indicative of an impaired driver. We can indeed look at Appellee's vehicle drift back and forth within its lane, and cross the dividing lane line at least once, but the State's argument presupposes that we have the expertise to interpret the significance of those movements to the degree that we can say there was indisputable evidence contradicting the trial judge's finding. Stated otherwise, are Appellee's movements indicative of an impaired driver, or is this the normal reaction of a driver when a police cruiser speeds up and closely follows one in the early morning hours? The police officer, through his training and experience, could have easily answered those questions, but he did not.

The State relies heavily on this Court's opinion in *State v. Alderete*, 314 S.W.3d 469 (Tex.App.--El Paso 2010, pet ref'd), which reversed a trial court's finding that a traffic stop was improper. In that case, two officers had followed the defendant's car for a short time on the Interstate and noticed it weaving within its lane in the very early morning hours. *Id*. at 471. Unlike this case, the officers in *Alderete* both testified that based on their training and experience, weaving within a lane late at night is a sign of a potentially intoxicated driver. *Id*. And unlike this case, the trial court specifically found the officers in *Alderete* were credible. *Id.*

The trial court in *Aldrete* based its exclusion on the rationale that no traffic offense had been committed. But the majority in *Alderete* noted that "the officers initiated a traffic stop, not because she violated the traffic code, but because she was swerving within her lane at a late hour, which based on their experience, indicated that she was intoxicated." *Id*. at 471. *Alderete* presents the situation where the historical facts of the encounter are uncontested, and unmixed with credibility and demeanor disputes. Accordingly, the reviewing court decides *de novo* whether those undisputed facts create a reasonable suspicion for the stop. *Guzman*, 955 S.W.2d

12

at 89.  Here, however, we are faced with the converse situation here where the critical fact--the relative significance of Appellee's driving pattern--would come from a witness the trial court found to lack credibility.  Moreover, that witness never testified to the significance of Appellee's driving as a possible indicator of intoxication.  We decline, at least based on this particular video, to substitute ourselves in as surrogate experts on that question.  We overrule the sole point and affirm the ruling of the trial court.


February 11, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

13