**Tyrone Ezell YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–03–00345–CR.

Court of Appeals of Texas, El Paso.

April 15, 2004.

Brian Chavez, Odessa, for appellant.

John W. Smith, Dist. Atty., Odessa, for state.

Before Panel No. 4 BARAJAS, C.J., SUSAN LARSEN, and McCLURE, JJ.

## *MEMORANDUM OPINION*

SUSAN LARSEN, Justice.

Tyrone Ezell Young was indicted for possessing more than one gram but less

than four grams of cocaine. He pleaded guilty and was convicted and sentenced to four years' imprisonment in accordance with a plea agreement. On appeal, he argues that the trial court erred by denying his motion to suppress. We reverse and remand.

## FACTS

Officers George, Gibson, and Potter of the Odessa Police Department were conducting surveillance for narcotics activity. Gibson and Potter were on foot, while George was in a patrol car parked out of view. Gibson and Potter radioed George, requesting that he stop a vehicle. In response to this request, George pulled over a car driven by Young. Immediately after pulling over, Young exited the car and made movements that made George suspect he was trying to conceal narcotics or a weapon. George patted him down and noted that he did not have a driver's license. At that point, George arrested Young for not having a valid license. George also noticed that a passenger in the car was a person who had been tried for numerous felonies. George and Gibson searched the car and found cocaine.

## APPLICABLE LAW

To make an investigatory stop of a vehicle, an officer must have reasonable suspicion, *i.e.*, specific, articulable facts that, when combined with rational inferences from those facts and the officer's experience and training, would lead an officer reasonably to suspect that a person in the vehicle was, is, or is about to be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App.2001); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000); *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App.1987); *Martin v. State,* 104 S.W.3d 298, 300 (Tex. App.-El Paso 2003, no pet.); *Klare v. State,* 76 S.W.3d 68, 72 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). An inarticulate hunch, suspicion, or good faith of the officer is never sufficient to justify the officer in ordering a subject to stop his vehicle. *Hoag,* 728 S.W.2d at 380. When several officers are working together, we consider the information known collectively by all the officers. *Id.; State v. Jennings,* 958 S.W.2d 930, 933 (Tex.App.-Amarillo 1997, no pet.). If one officer detains a person based on a radio dispatch from another officer, the officer requesting the detention must have reasonable suspicion to justify the detention. *Jennings,* 958 S.W.2d at 933.

When a defendant challenges the legality of a warrantless search or seizure, the State bears the burden of proving by a preponderance of the evidence that the search or seizure was legal. *See McGee v. State,* 105 S.W.3d 609, 613 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003); *Moreno v. State,* 124 S.W.3d 339, 346 (Tex.App.-Corpus Christi 2003, no pet. h.); *State v. Giles,* 867 S.W.2d 105, 108 (Tex.App.-El Paso 1993, pet. ref'd). When, as in this case, the trial court does not make explicit findings of fact in ruling on a motion to suppress, we review the evidence in the light most favorable to the trial court's ruling. *Carmouche,* 10 S.W.3d at 327–28. We review *de novo* the trial court's application of the law of search and seizure. *Id.* In conducting our review, we consider the totality of the circumstances. *Garcia,* 43 S.W.3d at 530.

## ISSUE ON APPEAL

In his sole issue, Young argues that the trial court erred by denying his motion

to suppress because George did not have reasonable suspicion to stop his car. Thus, we must consider the totality of the circumstances to determine whether the State proved by a preponderance of the evidence that when George stopped Young's car, the officers had specific, articulable facts that, when combined with rational inferences from those facts and their experience and training, gave them a reasonable suspicion that the occupants of the car were connected with criminal activity.

## DISCUSSION

Officer George was the only witness at the suppression hearing. The following is his entire testimony regarding the events that preceded his stopping Young's car:

Q: [D]o you have any specific assignment within the police department?

A: Currently assigned to Street Crimes Unit.

Q: And how were you working on May the 24th of 1998?

A: On a patrol division.

Q: And on that date, did you have an occasion to be in the vicinity of the 400 block of Snyder?

A: Yes.

. . .

Q: And what was your purpose for being there, please, sir?

A: Conducting surveillance of narcotics activity.

Q: And that was at 404 Snyder; is that correct?

A: Correct.

. . .

Q: And who was with you at that time?

A: Officer Scott Gibson and Gary Potter.

Q: And tell me, when you all do this sort of thing, how do you do it, specifically in this case. Were you together, did you separate? How do you do it?

A: Usually we do it different ways but usually the most basic way is some persons are out on foot because you can't be detected as easily on foot as you can in that patrol car. They will watch a certain residence from an alley or wherever they may be at. We usually keep somebody in a patrol car a few blocks away out of the area, or just where they can't be seen so to go undetected.

Q: And in this case, were you on foot looking or was someone else?

A: No, I was in a patrol car parked in the alley where they couldn't see me.

Q: Okay. And who was on foot?

A: Officer Gibson and Officer Potter.

Q: Now then, do they have communication with you?

A: Correct, with the police radio.

Q: And what is normal? If they see something that is—if they see something that would attract your attention, what do they do?

A: They see activity that is indicative of street level narcotics, they'll advise me of persons, the best description they can or the best vehicle description they can, where that vehicle is leaving, what direction they are going. Usually I try to wait until that vehicle is out of that area and we will initiate a stop to investigate.

Q: And what type of thing do you look at? If I were looking at a particular house suspicious of narcotics activities, what would I look for?

A: We usually look for a lot of frequent traffic, short term traffic, people pulling up, stopping for less than five minutes, coming back out, leaving, that type of activity.

Q: These people make contact with the residence?

A: Yes.

Q: Did that happen in this case?

A: Yes. We made a stop prior to that evening from that same residence.

Q: And when you made the prior stop, what happened?

A: We didn't locate any narcotics during that stop.

Q: Did you then have an occasion to stop a vehicle that was occupied by Tyrone Young?

A: Yes.

. . .

Q: Why did you stop him? Why did you stop Mr. Young?

A: Officer Potter and Gibson relayed to me over the radio that that car had left the residence after a short term traffic there, had pulled up, stayed there a short amount of time and left. They requested that I stop that vehicle.

George's testimony established that frequent, short-term traffic at a residence is a sign of narcotics activity; that the officers, for reasons unknown, were conducting surveillance for narcotics activity at a residence; that on a prior occasion, they had stopped an automobile coming from that residence and found no narcotics; that Potter and Gibson instructed George to stop an undescribed car because it had pulled up to the residence, stayed a short amount of time, and left; and that in response to this request, George pulled over a car driven by Young. George's testimony did not reveal why the officers singled-out the particular residence or area for surveillance, what was the description of the car Potter and Gibson asked George to stop, or what the occupants of that car did at the residence (*e.g*, went inside, talked to someone, or exchanged items). Although George arrested Young for failure to have a valid driver's license, George did not testify that he suspected Young had committed that offense, or any traffic offense, when he pulled over Young's car. George did not provide any information about the surrounding circumstances, such as the time of day, whether the officers had reason to suspect that there were drugs at the residence, or whether the area was known for drug activity. He did not describe his experience and training, nor did he describe the experience and training of Potter and Gibson.

Accepting all of George's testimony as true, drawing all rational inferences from his testimony in favor of the trial court's ruling, and considering the totality of the circumstances, we conclude that the State failed to prove by a preponderance of the evidence that the officers had the requisite reasonable suspicion to stop Young's car. *Cf. Klare*, 76 S.W.3d at 71, 73–75, 77 (holding that reasonable suspicion did not exist when the officer stopped the defendant's car at 2:30 a.m. near a shopping center where the businesses were closed and where there had been burglaries in the past); *Jennings*, 958 S.W.2d at 933 (holding that reasonable suspicion did not exist

when the officer relied exclusively upon a radio dispatch stating that the defendant was a suspect in a domestic dispute). Accordingly, we sustain Young's sole issue, reverse his conviction, and remand for further proceedings.