COURT
 OF APPEALS
                                       
 SECOND DISTRICT OF TEXAS
                                                   
 FORT WORTH
  
  
                                        
 NO.  2-04-401-CR
  
  
 CHRISTOPHER JOSEPH HADLEY                                           
 APPELLANT
  
                                                   
 V.
  
 THE STATE OF TEXAS                                                               
 STATE
  
                                              
 ------------
  
         
 FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON
 COUNTY
  
                                              
 ------------
  
                                
 MEMORANDUM
 OPINION[1]
  
                                              
 ------------
                                         
 INTRODUCTION




 Appellant Christopher Joseph
 Hadley was charged by information with the offense of terroristic threat. 
 A jury found Appellant guilty.  Pursuant
 to a plea agreement between the State and Appellant, the trial court sentenced
 him to sixty days in jail subject to a work release, associated fines, and a
 condition that he complete an anger management course. 
 The court certified Appellant=s right to
 appeal.  Appellant complains in one
 point that the trial court erred in failing to grant his motion to suppress
 statements he made during an investigative detention, in violation of his
 rights under the Fourth Amendment to the United States Constitution. 
 See U.S. Const. Amend. IV. 
                      
 FACTUAL AND PROCEDURAL BACKGROUND
 At the pretrial suppression
 hearing, the complainant Tony Kriss testified that, on the evening of
 September 8, 2003, he had driven Sherry Moses, a health care worker employed
 to care for his mother-in-law, to her home for her to let her dogs out and
 obtain a change of clothes.  He
 tried to help Moses fix her car, then pulled around to the front of her house
 and was waiting for her when Appellant walked up to his car and began making
 threatening statements. Kriss testified Moses came out of her house and asked
 if he wanted her to call 9-1-1.  When
 Appellant began threatening Kriss a second time, he asked her to call the
 police.  Kriss did not know
 Appellant=s identity. 




 Sherry Moses testified that,
 as she was leaving her house, she saw Appellant harassing and threatening
 Kriss.  Moses heard Appellant curse
 Kriss and say he thought Kriss was a policeman and that he hated Apigs.@ 
 Kriss told Appellant he was only there to give her a ride, and that he
 should go about his business.  Appellant
 approached Kriss as if he were going to physically attack him, she said. 
 She told Kriss they ought to call 9-1-1. 
 As the situation got out of hand, she broke down in tears and yelled at
 Appellant to stop.  Moses did not
 know Appellant.  Appellant
 apologized to her, but then told Kriss he was going to get his gun and come
 back and shoot him.  Kriss saw
 Appellant walk back toward his house as the police arrived. 
 Kriss was talking to the sergeant or supervisor, he recalled, when they
 heard Appellant come out of his garage and get in his pick-up truck. 
 
 Sergeant Deaver with the
 Lewisville Police Department was the first officer to arrive in response to a
 dispatch that there was a disturbance at the address of Moses=s residence.  He recalled
 that Kriss was standing on the sidewalk and confirmed that he was the basis
 for the call.  Sergeant Deaver
 testified that Kriss was able to articulate what had gone on, explaining that
 he had helped a friend with her car and had pulled around to the front of the
 house when a man confronted him.  When
 Sergeant Deaver asked him who the other party was, Kriss pointed to a
 residence about three to five houses away. 
 Kriss told Sergeant Deaver that the man had told him he hated police
 and was going to get his shotgun.  




 Sergeant Deaver was explaining
 the situation to Officer Cassels, who had also arrived by then, when Kriss saw
 Appellant moving toward a vehicle, and pointed him out to Sergeant Deaver. 
 Sergeant Deaver testified that the vehicle, a red Chrevrolet pick-up
 truck, started up and the headlights came on, and Kriss said, AI think that=s him.@ 
 Sergeant Deaver went to his police vehicle to attempt to stop the
 pick-up, but, at that moment, Officer Barrett pulled up.  Sergeant
 Deaver radioed Officer Barrett to continue on and stop Appellant=s truck.  Sergeant Deaver
 testified he wanted Officer Barrett to stop the vehicle to identify the
 suspect so that any pertinent charges for terroristic threat could be filed.  
 
 Officer Barrett testified he
 was dispatched to the location as back-up. 
 He confirmed that as he pulled up, Sergeant Deaver radioed him that
 there was a pick-up truck leaving and requested that he stop it. 
 Officer Barrett also recalled that Sergeant Deaver said that there
 might be a gun in the vehicle.  The
 only other information Officer Barrett had was that Appellant was a possible
 suspect in a disturbance.  He
 testified that the only reason he stopped the truck was because Sergeant
 Deaver had instructed him to do so.  




 Officer Barrett activated his
 overhead lights.  The driver of the
 pick-up made a U-turn, headed the opposite direction, then made a right turn,
 and traveled thirty to forty yards out into a field before stopping. 
 The driver then Abailed out@ and acted
 irate.  Officer Barrett testified
 that Appellant was the driver and told him he thought that Kriss was police or
 FBI and he did not want him there, and that was the reason for the
 disturbance.  Officer Barrett saw a
 shotgun on the front seat, picked it up and unloaded it, and laid it on the
 street. Appellant told him he had the shotgun with him because he hunted dove. 
 Sergeant Deaver arrived at that time and heard Appellant admit he had a
 confrontation with the person down the street but denied making any threats.
 Sergeant Deaver recalled that Appellant said he always carried a shotgun in
 his truck.  The officers determined
 no arrest needed to be made at that time. 
 After a follow-up investigation, a warrant was issued for Appellant=s arrest on
 September 26, 2003.  
                                  
 PRESERVATION OF ERROR
 At the outset, the State
 argues Appellant failed to preserve error because the trial court did not rule
 on his motion to suppress.  We
 disagree.  The trial court first
 stated that it would Acarry@ the motion to suppress during a hearing on other preliminary motions. 
 However, the trial court proceeded to conduct the suppression hearing
 outside the jury=s presence before trial began.  After
 several witnesses testified, Appellant=s counsel argued that the evidence failed to establish reasonable
 suspicion for the stop of Appellant=s vehicle.  The trial court
 expressed its opinion that reasonable suspicion to make the stop existed,
 based upon the facts made known to Sergeant Deaver, and that Officer Barrett
 stopped Appellant based on Deaver=s
 instruction, so Athere=s enough to get him there.@   




 The trial court noted it had
 not yet heard the third officer=s testimony.  However, after
 Officer Cassels testified, the trial court noted that her testimony did not
 add anything on the suppression issue.  Trial
 began immediately thereafter, and the statements made by Appellant during the
 stop were admitted into evidence without objection by Appellant=s counsel.  After the trial
 court pronounced sentence, it stated on the record that it was certifying
 Appellant=s right to
 appeal in that Amatters were
 raised by written motion, filed and ruled on before trial and not withdrawn
 or waived.  That=s what it is, isn=t it?@ 
 [Emphasis added.]  Appellant=s counsel responded, AYes.@ 
 




 To preserve error for
 appellate review, the record must show:  (1)
 that an appellant made a timely request, objection, or motion stating grounds
 sufficient to provide notice to the trial court; and (2) that the trial court
 ruled on the motion either explicitly or implicitly. 
 Tex. R. App. P.
 33.1(a)(1)(A),(a)(2)(A); see Garza v. State, 126 S.W.3d 79, 81-82 (Tex.
 Crim. App. 2004); James v. State, 102 S.W.3d 162, 169 (Tex. App.CFort Worth
 2003, pet. ref=d). 
 The court of criminal appeals requires that a defendant=s objections
 be specific enough to effectively communicate his complaint to the court but
 is Aless stringent@ as to the
 requirement of obtaining a ruling on a motion or objection. 
 Rey v. State, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995). 
 A trial court=s ruling need not be expressly stated Aif its actions or other statements otherwise unquestionably indicate a
 ruling.@  Id.; see also State v.
 Kelley, 20 S.W.3d 147, 154 n.3 (Tex. App.CTexarkana 2000, no pet.) (noting that in some instances party need not
 obtain express ruling on objection, motion, or request to preserve error).   
   




 The trial court not only
 certified that a ruling had been made but also stated on the record that it
 was certifying Appellant=s right to
 appeal matters raised by written motion filed Aand ruled on before trial.@  Additionally, the trial
 court clearly indicated on the record its opinion that the stop was based on
 reasonable suspicion, subject to one more witness, whose testimony he
 thereafter noted had nothing to contribute. 
 While a careful practitioner should always pursue a motion, objection,
 or request to a ruling, we hold that under the totality of the circumstances
 of this case, the trial court Aunquestionably@ indicated an
 implicit adverse ruling.  Compare
 In re C.J.G., No. 02-04-043-CV, 2005 WL 1405804, at *1-2 (Tex. App.CFort Worth June 16, 2005, no pet.) (mem. op.) (holding no error
 preserved although certification provided appeal was on matters Araised by written motion filed and ruled on before trial,@ when record contained no indication of ruling, illegible docket entry
 could have referred to more than one motion to suppress, evidence complained
 of not offered so as to indicate a ruling, and trial court stated only that it
 would allow an appeal of Athe
 suppression issues@), with
 Rose v. State, No. 03-03-00126-CR, 2003 WL 21939581, at *1 (Tex. App.CAustin August 14, 2003, pet. ref=d) (mem. op.) (not designated for publication) (holding ruling on
 motion to suppress Aimplicit@ although no record made of plea hearing that might have reflected a
 ruling, when certification stated case was Aa plea-bargain case, but matters were raised by written motion filed
 and ruled on before trial and not withdrawn or waived@).  
 It is generally accepted that A[w]hen a court overrules a pretrial motion to suppress evidence, the
 defendant need not subsequently object to the admission of the same evidence
 at trial to preserve error.@ 
 Garza, 126 S.W.3d at 84.  Because
 we have determined that the trial court implicitly overruled Appellant=s pretrial motion to suppress, no subsequent objection was needed when
 the trial court admitted the statements made by Appellant during the stop. 
 We hold that error was preserved.
                                    
 STANDARD OF REVIEW




 We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
 of review.  Ford v. State,
 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); Carmouche v. State, 10
 S.W.3d 323, 327 (Tex. Crim. App. 2000).  In
 reviewing the trial court=s decision,
 we do not engage in our own factual review. 
 Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
 v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
 trial judge is the sole trier of fact and judge of the credibility of the
 witnesses and the weight to be given their testimony. 
 State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State
 v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
 Therefore, we give almost total deference to a trial court=s determination of historical facts and review de novo the trial court=s application of the law of search and seizure. 
 Carmouche, 10 S.W.3d at 327; Guzman v. State, 955 S.W.2d
 85, 89 (Tex. Crim. App. 1997).  
 The trial court did not make
 explicit findings of historical fact.  We
 therefore review the evidence in the light most favorable to the trial court=s ruling and assume that the trial court made implicit findings of fact
 supported by the record.  Ford,
 158 S.W.3d at 493; Carmouche, 10 S.W.3d at 328. 
 However, we review de novo the determination of whether the stop
 and detention were Areasonable@ as an
 ultimate question of Fourth Amendment law. 
 Kothe v. State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004);
 Carmouche, 10 S.W.3d at 328; Guzman, 955 S.W.2d at 89. 
                                 
 INVESTIGATIVE DETENTION




 Appellant contends that the
 officers did not have reasonable suspicion to stop his vehicle because they
 did not personally observe the occurrence between Appellant and the
 complainant or any suspicious conduct.  Law
 enforcement officers may stop and briefly detain persons suspected of criminal
 activity on less information than is constitutionally required for probable
 cause to arrest.  Terry v. Ohio,
 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968). 
 Under the Fourth Amendment, a temporary detention is justified when the
 detaining officer has specific articulable facts which, together with rational
 inferences from those facts in light of the officer=s experience
 and general knowledge, would lead a reasonable officer to conclude that the
 person detained is, has been, or soon will be engaged in criminal activity.  Id.
 at 21-22, 88 S. Ct. at 1880; Brother v. State, 166 S.W.3d 255, 257
 (Tex. Crim. App. 2005), cert. denied, 126 S. Ct. 1172 (2006); Kothe,
 152 S.W.3d at 63-64.  The
 officer must be able to articulate more than an Ainchoate and unparticularized suspicion or >hunch= of criminal
 activity.@ 
 Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000). 
 AReasonableness@ under Fourth
 Amendment standards is a fact-specific inquiry measured in objective terms by
 examining the totality of the circumstances. Kothe, 152 S.W.3d at 63. 
 




 Appellant first contends that
 individualized suspicion of the officer who stopped his vehicle was required
 in order to furnish reasonable suspicion for the stop. 
 He argues that Officer Barrett, who actually made the stop, admitted
 that he had no personal knowledge of any terroristic threat by Appellant or
 the circumstances surrounding the disturbance, and testified that he merely
 stopped Appellant=s vehicle at Sergeant Deaver=s instruction.  Thus,
 Appellant argues, based on the testimony of Officer Barrett, the stop was
 unlawful.  We disagree. 
 The factual basis for stopping a
 vehicle need not arise from the officer=s personal observation, but may be supplied by information acquired
 from another person.  Brother,
 166 S.W.3d at 257 (citing Adams v. Williams, 407 U.S. 143, 147, 92 S.
 Ct. 1921, 1924 (1972)).  When one
 officer relies solely on another officer=s request to stop or arrest a suspect, the reasonable suspicion or
 probable cause must be based on the requesting officer=s knowledge.  See Farmah
 v. State, 883 S.W.2d 674, 678-79 (Tex. Crim. App. 1994). 
 




 If the requesting officer had
 sufficient information to establish probable cause or reasonable suspicion,
 then the second officer=s arrest or
 investigative detention generally will be justified. 
 Id.  If the
 requesting officer is in possession of sufficient knowledge, then he need not
 detail that knowledge to the arresting officer.  Tarpley
 v. State, 565 S.W.2d 525, 529-30 (Tex. Crim. App. 1978). 
 In examining the totality of the circumstances, we consider the sum of
 the information known to the cooperating agencies or officers at the time of
 the detention.  Fearance v.
 State, 771 S.W.2d 486, 509 (Tex. Crim. App. 1988), cert. denied,
 492 U.S. 927 (1989).  When several
 officers are working together, we consider the information known collectively
 by all the officers.  Id.; Hoag
 v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). 
 Specifically, when one officer detains an individual based upon a radio
 dispatch received from another officer, it is the officer requesting the
 information who must have reasonable suspicion to justify the detention. 
 Fearance, 771 S.W.2d at 509; Young v. State, 133 S.W.3d 839,
 841 (Tex. App.CEl Paso 2004, no pet.).




 The authorities cited by
 Appellant are distinguishable from our case. 
 In Klare v. State, a single officer was involved in the stop,
 and the discussion in that opinion relied upon by Appellant necessarily
 addressed only that officer=s personal
 observations.  76 S.W.3d 68, 71
 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  In Stewart v. State,
 the issue was simply whether an uncorroborated anonymous tip was sufficient to
 establish reasonable suspicion.  22
 S.W.3d 646, 648 (Tex. App.CAustin 2000, pet. ref=d).  As Appellant points
 out, the court in State v. Jennings observed that Aboth the trial and reviewing courts must proceed cautiously when it
 appears that the detaining officer acted upon nothing other than a
 radio dispatch or request to apprehend.@ 958 S.W.2d 930, 933 (Tex. App.CAmarillo 1997, no pet.) (emphasis in original). 
 The court stated that it is not enough to merely show that a stop was
 made because another officer requested it.  Id. 
 But the court of appeals in Jennings further stated: 
 AIn that situation, the focus lies upon the information known to the
 officer who made the broadcast.@  Id. 
 While this does not require that he testify, the State must present
 evidence justifying the officer=s broadcast or request; Ain other words, it must be shown that the officer who made the stop or
 arrest did so upon the request of someone who had reasonable suspicion or
 probable cause.@  Id.  
 
 In Jennings, the
 officer who made the stop did so based on a dispatch to a Adomestic disturbance.@  Id. at 932. 
 She received a second dispatch en route describing a vehicle, the
 driver of which was wanted for questioning in connection with the disturbance. 
 Id.  She testified
 she stopped the vehicle based solely upon the request to stop coupled with the
 description of the vehicle.  Id. 
 The officers who had investigated the disturbance did not testify,
 nor did the officer whose broadcast she relied upon in making the stop. 
 Id.  Absent any
 evidence regarding information known to the officer who allegedly made the
 request or investigated the incident, the court held that reasonable suspicion
 to justify the stop was not shown.  Id.
 at 933-34.  




 The critical issue upon which
 we must focus, then, is whether the requesting officer in this case had
 reasonable suspicion to justify instructing Officer Barrett to stop and detain
 Appellant.  In this case, unlike Jennings,
 that officer testified regarding the articulable facts upon which he based his
 request to stop Appellant=s vehicle. 
 Appellant argues that the only basis given by Sergeant Deaver was Ato identify the suspect so that pertinent charges could be filed. 
 At the time we had no identification of the suspect.@  Appellant further points
 to Sergeant Deaver=s testimony
 on cross-examination that no information was provided that would give an
 indication of the credibility of the complainant, Kriss, and his
 acknowledgment that he had not personally observed anything that had occurred
 between Kriss and Appellant.  Therefore,
 relying on Jennings, Appellant argues that Sergeant Deaver did not have
 reasonable suspicion to call for the stop. 
 Again, we disagree.
 Sergeant Deaver arrived on the
 scene shortly after hearing the dispatch based upon the 9-1-1 call by Moses
 reporting the disturbance.  The
 record is undisputed that Sergeant Deaver spoke directly with the complainant
 of the asserted terroristic threat, Kriss, who described the confrontation to
 him, leading him to believe that the offense of terroristic threat had been
 committed. Kriss also displayed his reliability as a witness by identifying
 himself and remaining at the scene, thereby putting himself in a position to
 be held accountable, and locating and pointing out Appellant to Sergeant
 Deaver as the person who had made the threats as he attempted to drive away. 
 Sergeant Deaver directed that the vehicle Appellant was driving be
 stopped so that he could be identified, as neither Kriss nor Moses knew him. 
 




 Whether information provided
 by a citizen-informant furnishes the requisite level of reasonable suspicion
 to justify an investigative detention depends on the totality of the
 circumstances in the particular case.  Woods
 v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 
 The information provided must possess sufficient indicia of reliability
 as well as sufficient content.  Id.
 (citing Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415-16
 (1990)).  Reliability is generally
 shown by the very nature of the circumstances under which the incriminating
 information became known to the citizen.  Brother,
 166 S.W.3d at 258, 259 & n.4 (holding stop may be justified based on facts
 provided by citizen-eyewitness, when the information is adequately
 corroborated by the officer).  
 The citizen=s veracity, reliability, and basis for knowledge are highly relevant in
 determining the value of the information. 
 White, 496 U.S. at 328-29, 110 S. Ct. at 2415; see Pipkin
 v. State, 114 S.W.3d 649, 654 (Tex. App.CFort Worth 2003, no pet.) (holding facts relayed by cell phone caller
 adequately corroborated when caller was eyewitness to criminal behavior,
 provided detailed description and location of defendant=s vehicle, and made himself accountable by providing contact
 information to officer); State v. Stolte, 991 S.W.2d 336, 341 (Tex.
 App.CFort Worth 1999, no pet.) (holding detailed information related by
 caller describing erratic driving and identifying suspect=s car and location, demonstrated sufficient reliability when caller was
 concerned citizen and permitted himself to be identified after stop).     
 




 A private citizen whose only
 contact with the police is a result of having witnessed a criminal act by
 another is considered inherently credible and reliable. 
 Esco v. State, 668 S.W.2d 358, 360-61 (Tex. Crim. App. 1982); see
 also Johnson v. State, 171 S.W.3d 643, 649 (Tex. App.CHouston [14th
 Dist.] 2005, pet. ref=d) (holding unnamed citizen who presents unsolicited, face-to-face
 report of criminal conduct inherently more reliable than anonymous
 tip); Pipkin, 114 S.W.3d at 655 (noting that detailed description of
 the wrongdoing, accompanied by information that the citizen observed the event
 firsthand, entitles the information to greater weight).  
 
 The same is true when the
 citizen is the victim of the crime.  Victor
 v. State, 995 S.W.2d 216, 224 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d); Nelson v. State, 855 S.W.2d 26, 30 (Tex. App.CEl Paso 1993, no pet.); see also Virgoe v. State, No.
 05-02-01040-CR, 2003 WL 21142777, at *3 (Tex. App.CDallas May 19, 2003, pet. ref=d) (not designated for publication); Brown v. State, No.
 01-97-01067-CR, 2000 WL 190196, at *2 (Tex. App.CHouston [1st Dist.] Feb. 17, 2000, no pet.) (not designated for
 publication).      




 Considering the totality of
 the circumstances together, Kriss established his reliability by (1) waiting
 for the arrival of the police and putting himself in a position to be held
 accountable; (2) talking freely with Sergeant Deaver in describing the
 confrontation; (3) pointing out Appellant=s location and vehicle as he was leaving, which the officer could
 immediately corroborate; (4) remaining at the scene during the investigation;
 and (5) describing himself as the victim of the alleged threats.  We
 hold that Sergeant Deaver could reasonably rely on the information provided by
 Kriss, which established reasonable suspicion to instruct Officer Barrett to
 make the stop.
                                           
 CONCLUSION
 We hold that the State
 established reasonable suspicion for the investigatory stop and detention of
 Appellant; hence, the trial court correctly denied Appellant=s motion to suppress.  We
 overrule Appellant=s sole issue
 and affirm the judgment of the trial court. 
 
  
  
 ANNE GARDNER
 JUSTICE
  
 PANEL B:  
 LIVINGSTON, GARDNER, and WALKER, JJ.
  
 DO
 NOT PUBLISH
 Tex. R. App. P. 47.2(b)
  
 DELIVERED: 
 June 15, 2006


 
 

 

 
 [1]See
 Tex. R. App. P. 47.4.