08-17-00175-CR

ACCEPTED
08-17-00175-CR
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
5/29/2018 11:19 PM
DENISE PACHECO
CLERK

NO. 08-17-00175-CR

**IN THE
COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
5/29/2018 11:19:14 PM
DENISE PACHECO
Clerk

_____

**THE STATE OF TEXAS**,
*Appellant,*

v.

**JESUS TABARES**,
*Appellee.*

On Appeal from Cause No. 20140C13890
In the County Criminal Court No. 4 of El Paso County, Texas

**APPELLANT'S BRIEF**
Oral Argument is Waived

EL PASO COUNTY PUBLIC DEFENDER'S OFFICE

**Attorneys for the Appellee**

**JAIME GÁNDARA,**
*Chief Public Defender*

**Octavio A Dominguez**
Assistant Public Defender
State Bar No. 24075582
500 E. San Antonio, Room 501
El Paso, Texas  79901
(915)546-8185 Ext. 3528
FAX (915) 546-8186

# NAMES OF PARTIES AND COUNSEL

Pursuant to Texas Rules of Appellate Procedure, Rule 38.1(a), Appellant offers the following names of all parties, trial and appellate counsel:

1. Defendant/Appellee JESUS TABARES was represented at the trial stage by Octavio A Dominguez and Yajaira Halm, El Paso County Assistant Public Defender's, 500 E. San Antonio, Suite 501, El Paso, TX, 79901.

2. The State of Texas was represented at the trial stage by Ghalib A. Serang and David J. Nunez, Assistant District Attorneys, 500 E. San Antonio, Suite 201, El Paso, TX 79901.

3. The Trial Court Judge was Judge JESUS HERRERA presiding for Judge of the County Criminal Court No. 4, 500 E. San Antonio, Suite 702, El Paso, TX 79901.

4. Currently at the appellate stage, Mr. Tabares, is represented by Jaime Gándara, El Paso County Public Defender and Octavio A Dominguez, Assistant Public Defender, El Paso County Public Defender's Office, 500 E. San Antonio, Suite 501, El Paso, TX 79901.

5. At the Appellate stage, the State is represented by District Attorney, Jaime Esparza and Raquel Lopez, Assistant District Attorney, Appellate Division, 500 E. San Antonio, Suite 201, El Paso, TX 79901.

# TABLE OF CONTENTS

**Names of Parties and Counsel**      ii

**Table of Contents**      iii

**Table of Authorities**      iv

**Statement of the Case**      1

**Reply to Issues Presented**      2

**Statement of Facts**      3

**Summary of the Argument**      8

**Argument**      9

**Prayer for Relief**      22

**Certificate of Service**      23

**Certificate of Compliance**      23

# TABLE OF AUTHORITIES

**Criminal Court of Appeals Cases**

*Brezeale v. State*, 683 S.W.2d 446 (Tex. Crim. App. 1984)…………………….....11

*Carmouche v. State*, 10S.W.3d 323 (Tex. Crim. App. 2000………………………...10

*Carter v. State*, 3 309 S.W.3d 31 (Tex. Crim. App. 2010)……………………….15

*Castro v. State*, 227 S.W.3d 737 (Tex. Crim. App. 2007)………………………...11

*Garcia v. State*, 827 S.W.2d 937 (Tex. Crim. App. 1992)………………………...11

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)……………...…...9, 10, 11

*Hardin v. St*ate, 471 S.W.2d 60 (Tex. Crim. App. 1971)…………...…………........9

*McCloud v. State*, 527 S.W.2d 885 (Tex. Crim. App. 1975)…………………….....10

*Miller v. State*, 393, S.W.3d 255 (Tex. Crim. App. 2012)………………………...13

*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)……..............…………9, 10

*State v. Duran*, 396 S.W.3d 563 (Tex. Crim. App. 2013)………………...12, 14, 18

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000)…………………....9, 10, 17

*State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002)………...…...………….9

*State v. Weaver*, 349 S.W.3d 521 (Tex. Crim. App. 2011)………...……11, 19, 21

*Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000)………………………….12

*Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997)………...…………………11

**Court of Appeal Cases**

*Burke v. State*, 27 S.W.3d 651 (Tex. App.--Waco 2000)………………………9, 10

*Robuck v. State*, 40 S.W.3d 650 (Tex. App.--San Antonio 2001)………...............9

*State v. Gendron*, 2015 Tex. App. LEXIS 1334, 2015 WL 632215 (Tex. App—El Paso 2015…………………………………………………………………………...15, 17

*State v. Vasquez*, No. 08-13-00079-CR, 2015 Tex. App. LEXIS 2543 (Tex. App.-- El Paso 2015)………...…………………………………………………..14, 17, 20, 21

*Young v. State*, 133 S.W.3d 839 (Tex. App.--El Paso 2004)…………..............……11

**United States Supreme Court Cases**

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)……………. …11

*Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)….12

## STATEMENT OF THE CASE

The State of Texas (hereinafter "the State") charged Jesus Tabares (hereinafter "Tabares") with Driving While Intoxicated in a one-count information. (CR: 6).[1] Tabares pled not guilty to that charge. (CR: 38). On June 13, 2017, Tabares filed his Motion to Suppress Evidence. (CR: 53-56). The trial court heard and granted Tabares' Motion to Suppress on July 14, 2017. (CR: 58-59, 81); (RR:1, 38). The State's Notice of Appeal was filed on July 27, 2017. (CR: 77).

---

[1] In this Brief, "CR" refers to the Clerk's Record, which is followed by page number. "RR" refers to the Reporter's Record, and is followed by the volume number, then page number. "SX" refers to the State's exhibits, also numbered. "DX" refers to Defense exhibits.

## REPLY TO ISSUES PRESENTED FOR REVIEW

1) THE TRIAL COURT CORRECTLY RULED THAT SGT. VAN VALEN'S TESTIMONY WAS NOT CREDIBLE AND THUS SGT. VAN VALEN LACKED REASONABLE SUSPICION TO CONDUCT A TRAFFIC STOP BASED ON THE NO-HEADLIGHTS VIOLATION

2) THE TRIAL COURT CORRECTLY RULED THAT SGT. VAN VALEN'S TESTIMONY WAS NOT CREDIBLE AND THUS SGT. VAN VALEN LACKED REASONABLE SUSPICION TO CONDUCT A TRAFFIC STOP BASED ON OTHER ALLEGED VIOLATIONS

## STATEMENT OF FACTS

On December 21, 2014, El Paso Police Sergeant John Van Valen ("Van Valen"), while in the course of patrol, pulled over Tabares' vehicle at the 1600 block of North Zaragosa in El Paso, Texas. (RR:7-9); (CR:8). Following the stop, Tabares was arrested for allegedly driving while intoxicated with a blood alcohol concentrate of 0.15 or more. (CR:8-9).

On January 9, 2015, the Office of the El Paso County Public Defender was appointed to represent Tabares on the matter. (CR:11-13). On March 19, 2015, Tabares was arraigned. (CR:34). On June 13, 2017, Tabares filed both a motion to suppress confession or statements and a motion to suppress evidence, asking the court to exclude the State's evidence on the grounds that it was obtained unlawfully because Tabares was pulled over without probable cause and without a warrant. (CR:48-52; 53-56).

The matter was heard on July 17, 2017, by Judge Jesus Herrera of El Paso County Criminal Court Number 4. (CR:58). The State called Van Valen to testify as to the stop and also introduced dash cam video from the patrol car.[2] (RR:7-11).

---

[2] For efficiency purposes the Defense will adopt the State's citation nomenclature. Citation to the dashcam video will be by the real-time timestamps reflected in the upper, right-hand corner of the dash-camera video admitted into evidence. *See* State's Exhibit 1 ("SX1").

Van Valen testified he pulled over Tabares for three alleged traffic violations: (1) not having his taillights on, (2) not having his headlights on, and (3) making several lane changes without signaling. (RR:17-18). Van Valen testified that in the course of his stop, and prior to Van Valen activating his lights and siren, Tabares' vehicle did not have its tail lights or headlights activated. (RR:15). He later identified a point during the stop where he alleged that Tabares activated both his taillights and headlights. (RR:15-16; 20-22). In regards to the violations for not signaling lane changes, Van Valen clarified that the failure to signal violations occurred when Tabares' vehicle allegedly drifted into the center turn lane without signaling, then drifted to the right, back to the left most northbound lane, again allegedly without signaling. (RR:19)

In response to questioning from defense counsel, Van Valen acknowledged that he is trained to observe and record relevant details of a stop in his police report and, if charges follow, in the complaint affidavit. (RR: 24-25). Van Valen agreed that if a driver were to turn on his lights halfway through a traffic stop, that it would be relevant information to include in a traffic stop. (RR:25-26). After taking a moment to review his report and complaint affidavit, Van Valen admitted that he did not include that relevant observation in his report or complaint affidavit. (RR:27-28).

In response to questioning from the judge, Van Valen testified that at all times, he was behind Tabares' vehicle driving Northbound on Zaragoza; Tabares' vehicle never passed Van Valen's and Tabares was not speeding. (RR:34-35). Van Valen stated that he first noticed that Tabares' lights were allegedly not on when Tabares was traveling in the center lane, ahead and to the left, and later when he saw that there was no illumination on the roadway. (RR:36). He acknowledged he was at least half a block in distance from the vehicle at the time. (RR:36). He stated that the video did not capture all of his observations of Tabares' vehicle, even though it starts thirty seconds before Van Valen activated his lights and siren. (RR:34-35). He indicated that in those more than thirty seconds that he followed Tabares' vehicle, they travelled for at least half a block. (RR35-36).

He acknowledged that someone driving at 5:00 am without tail lights or headlights would be driving in an unsafe manner. (RR:29). He identified other vehicles on the road at the same time travelling southbound.[3] He admitted that despite the alleged threat to other vehicles on the road, he waited at least thirty seconds to turn on his lights and siren to pull Tabares' vehicle over. (RR:31).

The dash cam introduced into evidence by the State provides a clear view of the stop. Tabares can be seen driving northbound on Zaragoza, with Van Valen

---

[3] The State conceded that there were other vehicles in the vicinity and that driving without taillights or headlights on could be unsafe for other vehicles. (RR:30-31).

several car lengths behind him. *See* SX1 at 05:05:27-5:05:50. Van Valen is at least half a block away from Tabares' vehicle at the outset. *See* SX1 at 05:05:27. At the location where the stop occurred, Zaragoza is a 5 lane street, with two streets each running north and south, and a center dividing lane reserved for left hand turns. *See generally* SX1 at 05:06:05-05:06:10. Tabares is driving in the left-most northbound lane. *See generally* SX1.

Van Valen follows Tabares approximately thirty seconds before activating his sirens. *See* SX1 at 05:05:27-5:05:55. In that time, Tabares' vehicle does not change lanes. *See* SX1 at 05:05:27-5:05:55. Tabares remains in the left-most northbound lane for the entirety of the relevant time. *See* SX1 at 05:05:27-5:05:55. At some point during the stop, Tabares' vehicle safely drifts within its own lane. *See* SX1 at 05:05:37-05:05:40.

Tabares' tail lights become more clearly illuminated as Van Valen closes the distance between the vehicles when Tabares engages and then disengages the brakes of his vehicle.[4] *See* SX1 at 05:05:43-05:05:51.

Van Valen activates his siren. *See* SX1 at 05:05:55. Tabares first signals a right lane change but then changes his mind and signals and turns left, first into the

---

[4] The State conceded that at this point in the video, the taillights "are more illuminated now" than they were "two seconds ago." (RR:21); SX1:05:05:40-05:05:44). Van Valen testified that the image of the video depicting the moment he testified corresponded to Tabares turning on the tail lights and that defense counsel questioned regarding the engagement of Tabares' vehicle's brake lights was "distorted" and that it was "hard for [him] to tell] because [i]t looks like one continuous bar . . . on the back of the trunk." (RR:22-24); (SX1 at 05:05:41-05:05:47).

center turn lane and then into an Auto Zone parking lot. *See* SX1 at 05:05:57-05:06:08. As the car turns into the parking lot, Tabares' headlights and tail lights are clearly on. (RR:22-24); (SX1 at 05:06:28).

Following testimony by Van Valen and the presentation of the evidence, the trial court issued the following pronouncement on the motion:

> These are [the] Court's finds of fact. That the defendant was stopped on or about the 21st of December, 2014, at approximately 05:05. Five o'clock in the morning. That the defendant was stopped pursuant to an allegation made that lights – headlights or taillights – were noticeably off on the vehicle that the defendant was driving, northbound on Zaragoza Boulevard, in El Paso County, Texas.
>
> After the conclusion of the evidence, these are the findings – conclusions of law, rather. Oh, no. Findings of fact. I find it very, very difficult to put all my eggs in the basket of the credibility of this sergeant, police sergeant.
>
> …
>
> I'm going to grant the motion to suppress. Quite frankly, I find the credibility of this police officer in question. Court taking notice of the video involved, and the discrepancy between what is obviously on the video and what is on the affidavit, and what he states and his lack of – or inability to explain how he was able to see the headlights being on or off at the distance that, at least from what I could see on the video, was likely, possible.
>
> Therefore, I'm going to grant the motion to suppress. I don't think there was sufficient cause to stop.

(RR:37-38).

# SUMMARY OF THE ARGUMENT

1. The evidence supports the trial court's conclusion that Sgt. Van Valen lacked reasonable suspicion in conducting a traffic stop of Tabares.

2. The evidence and the record show that the trial court found the testimony of Sgt. Van Valen lacked credibility in regards to all parts of his testimony.

3. Specifically, the trial court found that Sgt. Van Valen's testimony was contrary to what was depicted in the video evidence played at the Motion to Suppress.

4. The trial court determined that Sgt. Van Valen's testimony in particular about the headlights was so contrary to the video evidence that it called into question Sgt. Van Valen's credibility in regards to the other alleged violations.

5. The trial court is due near total deference in its evaluation of the credibility and demeanor of Sgt. Van Valen.

6. Based on the record and the evidence, this court should affirm the trial court's ruling granting Tabares' Motion to Suppress the basis of the traffic stop.

# ARGUMENT

## 1. RESTATEMENT OF FIRST ISSUE: THE TRIAL COURT CORRECTLY RULED THAT SGT. VAN VALEN'S TESTIMONY WAS NOT CREDIBLE AND THUS SGT. VAN VALEN LACKED REASONABLE SUSPICION TO CONDUCT A TRAFFIC STOP BASED ON THE NO-HEADLIGHTS VIOLATION

### a. Standard of Review

Generally speaking, the rulings of a trial court are presumed to be correct and the appellant must affirmatively show the existence of error. *Hardin v. St*ate, 471 S.W.2d 60, 63 (Tex. Crim. App. 1971). A trial court's rulings on a motion to suppress evidence are analyzed using a bifurcated standard of review. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (citing *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990)); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Robuck v. State*, 40 S.W.3d 650, 654 (Tex. App.--San Antonio 2001, pet. ref'd); *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.--Waco 2000, pet. ref'd). In *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), the Court of Criminal Appeals identified three different types of appellate issues to identify the proper standard of review: (1) "historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor;" (2) "application of law to facts, also known as mixed questions of law and fact, the ultimate resolution of those questions turns on an

evaluation of credibility and demeanor;" and (3) "mixed questions of law and fact not falling within [the second] category."

*Guzman* instructs appellate courts to give deference to the trial court's determination, expressed or implied, of historical facts, if supported by the record, and generally will review *de novo* the court's application of the law to the facts. *Ross*, 32 S.W.3d at 856; *Carmouche v. State*, 10S.W.3d 323, 329 (Tex. Crim. App. 2000); *Burke*, 27 S.W.3d at 654. The trial court's legal ruling will be upheld if it is correct on any theory of the law applicable to the case, even if the trial court gives the wrong reason for its opinion. *Romero*, 800 S.W.2d at 543. The same amount of deference applies to a trial court's rulings on "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89; *Ross*, 32 S.W.3d at 856.

An appellate court is not required to give deference to the legal ruling of the trial court and is not bound by an improper legal ruling. These "mixed questions of law and fact not falling within [the second] category" are entitled to d*e novo* review and is limited to questions of law or mixed questions of law and fact that do not depend upon the determinations of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

A reviewing court must indulge every presumption in favor of the regularity of the procedures in the trial court. *McCloud v. State*, 527 S.W.2d 885, 887 (Tex.

Crim. App. 1975). Appellate courts should view the evidence in the light most favorable to the trial court's ruling. *Guzman*, 955 S.W.2d at 89 (internal citation omitted). "The winning side is afforded the 'strongest legitimate view of the evidence' as well as all reasonable inferences that can be derived from it." *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013), quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). Thus, absence of direct proof of their falsity, the trial court recitations in the records are binding. *Brezeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (opinion on rehearing).

## b. Application

Because Tabares was stopped without a warrant and without his consent, the State had the burden of proving the reasonableness of the stop. *See Castro v. State,* 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Young v. State*, 133 S.W.3d 839, 841 (Tex. App.--El Paso 2004, no pet.). A police officer is justified in detaining a motorist when, based on the totality of the circumstances, the officer has specific articulable facts, together with rational inferences from those facts, that lead him to conclude that the motorist is, has been, or soon will be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). An officer may lawfully stop and detain a person for a traffic violation that the officer witnesses. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). The

decision to stop an automobile is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

The trial court ruled that Van Valen lacked reasonable suspicion to stop Tabares because it found that Van Valen was not credible. As previously discussed, the trial court's credibility assessment would typically be, and is, entitled to near total deference. However, the State insists that the trial court is not entitled to deference on its rulings for two reasons. It argues that "to the extent that the trial court based its ruling on a determination of fact that Sgt. Van Valen did not observe Tabares' failure to display his headlights, such a determination is unsupported by the record in two respects[:]" 1) Van Valen provided a basis for his observation (residual illumination on the road) and 2) the video corroborates Van Valen's testimony that Tabares' vehicle did not have its head lights on prior to initiation of the traffic stop. App.'s Brief at 12-13. Consequently, the State argues, that traffic violation alone was sufficient to establish reasonable suspicion to pull Tabares over. In brief, the State's argument simply boils down to its insistence that the video indisputably corroborates Van Valen's version of events and thus the Court should apply a *de novo* standard of review.

The State cherry picks legal holdings without explaining how the facts in those cases support the circumstances in this case. *See* App.'s Brief 11-12. In fact, several of the cases cited by the State actually support the position that the trial court's ruling is due near total deference. In *Duran*, the trial court granted a motion to suppress for the defendant that turned on a credibility issue where the trial courts conclusion was, apparently, in contradiction to what the State insisted was depicted in the video evidence. *Duran*, 396 S.W.3d at 568. The State appealed and the appeals court reversed the trial court. *Id.* The Criminal Court of Appeals, however, sided with the trial court and ruled that the "same deferential standard of review 'applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *Id.* at 570. It further held that "[a]lthough appellate courts may review *de novo* 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual findings on whether a witness actually saw what was depicted on a videotape or heard what was said . . . ." *Id.* at 570-71 (citations omitted). It distinguished *Miller v. State*, 393, S.W.3d 255 (Tex. Crim. App. 2012)[5] by stating that in that case, the trial judge's findings "were contradicted by [recorded] events" that did not involve an evaluation of credibility." *Id.* at 573. In other words, *de novo* review of the trial court's

---

[5] Also cited in support without discussion by State. *See* App.'s Brief 11-12.

application of the law to the historical facts is permissible *only if* the facts are not dependent upon determinations of credibility and demeanor of the involved witness.

Another case cited by the State without discussion is instructive on how this Court has dealt with credibility assessments related to video evidence of the stop.[6] *See State v. Vasquez*, No. 08-13-00079-CR, 2015 Tex. App. LEXIS 2543 (Tex. App.--El Paso 2015, pet. ref'd) (not designated for publication). In *Vasquez*, the State again argued that the trial court's findings were not entitled to almost total deference in its ruling. *Id.* at *7. In *Vasquez*, an officer had pulled over a motorcyclist for purportedly driving in a manner that the officer, through his training and experience, identified with intoxicated driving, including driving on the shoulder, weaving in the lane and operating the motorcycle with only one hand. *Id.* at *1-3. A video recording was introduced at the hearing that disproved some of the officer's observations, specifically that the motorcycle never entered the shoulder of the road. *Id.* at *3. Based on that inconsistency, the trial court found the officer's testimony not credible, holding that "[t]he video does not confirm, and may actually refute, the [officer's] claims." *Id.* at *5. The trial court granted the motion to suppress and the State appealed. *Id.*

---

[6] *See* App.'s Brief 11-12.

14

On appeal, this Court ruled that the correct standard of review was near total deference because "the recording does not indisputably contradict the trial court's findings . . . ." *Id.* at *11. The Court reasoned that the trial court was justified in finding the officer's testimony not credible because

> the video recording contradicted some of the events he claimed justified stopping [the defendant], and the recording does not indisputably negate the trial court's findings. Thus, the trial court reasonably could have disbelieved, and was entitled to disbelieve, the portion of [the officer's] testimony that, based on his experience, he had a reasonable suspicion [the defendant] was intoxicated. Because we are not in a better position than the trial court to assess factual issues turning on credibility, and because the record supports rather than indisputably negates the trial court's factual findings, we defer to the trial court's resolution of this issue.

*Id.* at *8.

Case after case supports the proposition that the trial court's ruling should be entitled to near total deference. *See Carter v. State*, 3 309 S.W.3d 31, 40 (Tex. Crim. App. 2010) (providing that "a trial court's determination of historical facts based on a videotape recording is still reviewed under a deferential standard"); *State v. Gendron*, 2015 Tex. App. LEXIS 1334, 2015 WL 632215, at *7-10 (same, discussing the law). In *Gendron*, another case decided by this Court, the arresting officer testified that he pulled over the defendant motorist after observing the motorist swerving from lane to lane at least five times over a two mile distance and that other drivers were placed in danger. *Gendron*, 2015 Tex. App. LEXIS 1334 at

*3-4. In the course of cross examination and following the playing of the dash cam recording of the stop, the officer acknowledged that the motorist only crossed lanes "once or twice" rather than the five times he had testified earlier and conceded that traffic was light and that at some points the motorist was not endangering anyone. *Id.* at *4-5. The trial court ruled that at most it noticed slight weaving within a lane, and not even the crossing of lanes "once or twice" that the officer had compromised on. *Id.* at *6. The court also found that the video did not support the officer's testimony regarding the danger the motorist placed other drivers in because traffic was light. *Id.* Because the trial court found the dash cam did not support the officer's claims, and in fact contradicted them, it found his testimony not credible and granted the motion to suppress based on lack of reasonable suspicion. *Id.* The trial court was upheld on appeal. *See id.* at *16, 18.

Similarly in this case, the trial court reviewed the video multiple times and even questioned Van Valen directly to assess for itself how Van Valen could have seen the lack of headlight illumination of Tabares' vehicle. (RR:33-36). In response to the trial court's questioning, Van Valen stated he knew Tabares' headlights were off "by the lack of illumination on the roadway," even though Van Valen admitted that throughout the time he was aware of Tabares' vehicle, Van Valen was behind Tabares' vehicle, his own vehicle was never passed by Tabares on the road, and Van Valen was at least half a block length in distance. (RR:36).

16

The trial court clearly did not find Van Valen's answer satisfactory because it was the very last question posed to Van Valen and the trial court promptly ruled in favor of Tabares. (RR:36-38). Moreover, Van Valen acknowledged that he did not include in his complaint affidavit the relevant fact that Tabares allegedly turned on his headlights in the course of the stop. (RR:27-28).

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Ross*, 32 S.W.3d at 855. Because the trial court observes first-hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record, the judge may believe or disbelieve all or any part of a witness's testimony, even uncontroverted. *Id*. Here, it is clear that the trial court disbelieved Van Valen's testimony. Because the State's appellate issue involves the trial court's application of the law to the facts, and it turns on an evaluation of the credibility and demeanor of Van Valen--whether Van Valen could have observed the headlights on from his position on the road—the trial court is entitled to near total deference of its ruling. As in *Duran*, as in *Vasquez*, and as in *Gendron*, this Court should uphold the trial court's ruling.

**2. RESTATEMENT OF SECOND ISSUE:** THE TRIAL COURT CORRECTLY RULED THAT SGT. VAN VALEN'S TESTIMONY WAS NOT CREDIBLE AND THUS SGT. VAN VALEN LACKED REASONABLE SUSPICION TO CONDUCT A TRAFFIC STOP BASED ON OTHER ALLEGED VIOLATIONS

In its second point of error, the State doubles down on its argument that the video *indisputably* supports Van Valen's testimony and argues that even if the trial court did not believe Van Valen as to whether or not Tabares' headlights were activated, Van Valen was still authorized to pull over Tabares for the other offenses cited in his complaint affidavit: lack of tail lights and failing to signal when allegedly changing lanes. App.'s Brief at 21-25.

The State runs into the same legal principle as it did on its first point of error. The trial court is entitled to near total deference in regards to facts that turns on its credibility assessment. The trial court clearly found Van Valen's testimony in regards to the alleged lack of headlight violation was so untrustworthy, that it disbelieved the officer's claims related to the other offenses. Although the trial court's facts and findings and conclusions of law did not explicitly address the other violations, the trial court was clear that it found it "very, very difficult to put all my eggs in the basket of the credibility" of Van Valen. (RR:38).

The trial court implicitly discredited Van Valen's alleged observations in regards to the other alleged offenses when it made its ruling. *See Weaver*, 349

S.W.3d at 525 (upholding a suppression ruling on the basis of an implicit factual finding). Van Valen clearly identified the reasons for his stop both in direct examination and in cross. *See* (RR:8, 17-19). The questioning from both the State's prosecutor and defense counsel touched on all three alleged violations.[7] In regards to the tail lights, during the course of the State's direct examination, the trial court commented that Tabares' taillights "seem to be on." (RR;14). When defense counsel asked if Tabares could possibly be engaging the brake, and thus illuminating the brake lights at the point where Van Valen testified Tabares turned on his lights, *see* (RR:15), Van Valen testified that the video was "distorted" and that it was "hard for [him] to tell] because [i]t looks like one continuous bar . . . on the back of the trunk." (RR:22-24); (SX1 at 05:05:41-05:05:47). Regardless, Van Valen acknowledged that both the headlights and taillights were activated and working properly by the time Tabares' vehicle came to a stop. (RR:24). The trial court could have reasonably inferred that Tabares' taillights were activated throughout the entire stop when it discredited Van Valen's testimony in regards to the headlights. *See Golleher v. Herrera*, 651 S.W.2d 329, 333 (Tex.App.--Amarillo 1983, no pet.) (where witness agreed that the taillights could not be turned on

---

[7] In response to the State's prosecutor asking what violations he saw Tabares commit, Van Valen answer, "What I observed is that the vehicle wasn't operating with its headlamps or tail lamps, and that it was changing lanes without signaling." (RR:8). In response to defense counsel summarizing his earlier testimony and seeking clarification, Van Valen agreed that he pulled over Tabares for lack of taillights, lack of headlights, and failure to In regards to the violations for not signaling lane changes, Van Valen clarified that the failure to signal violations occurred when Tabares' vehicle allegedly drifted into the center turn lane without signaling, then drifted to the right, back to the left most northbound lane, again allegedly without signaling. (RR:17-19)

19

without turning on the headlights, testimony that the taillights were burning provided a basis for a reasonable inference that the headlights were also on).

In regards to the alleged lane changing without signaling, Van Valen testified both in direct and cross to specific portions of the video showing the alleged violations. (RR: 15, 32-33; SX1 at 05:05:37-05:05:40). Van Valen acknowledged that during that portion of the video, the vehicle was difficult to see in the video. (RR:12) (stating that "[t]he vehicle is still ahead of me, but it's dark because of the no taillights."). In response to questioning from the trial court, Van Valen reiterated that Tabares was first observed in the center lane to his left. (RR:36).

The trial court clearly knew that both the taillights and alleged lane changing without signaling were issues of contention and alleged reasons for the traffic stop. The trial court implicitly found those allegations not credible. It should not allow the State to have another bite of the apple as to the credibility of Van Valen simply because it disagrees with the trial court's reasonable conclusion. As this Court stated in *Vasquez*, "trial courts are vested with the function of determining historical facts; the fortuity of a video should not entitle the loser, whoever that may be, to a *de novo* review by three, or nine, more sets of eyes." *Vasquez*, 2015 Tex. App. LEXIS 2543 at *9. The trial court already determined that Van Valen's testimony in particular about the headlights was so contrary to the video evidence

that it called into question his credibility in regards to the other alleged violations. Thus, under *Weaver*, this Court should uphold the trial court's implicit finding of fact in regards to the alleged lack of taillights and alleged lane changing without signaling.

## CONCLUSION

The trial court is due near total deference in its evaluation of the credibility and demeanor of Sgt. Van Valen when he testified at the hearing for Tabares' motion to suppress. Contrary to the State's position, the trial court did address and rule on all of the alleged traffic violations. The trial court reviewed the video multiple times and listened to Sgt. Van Valen's testimony, even posing its own questions to the officer to give him an opportunity to address the trial court's concerns about what Sgt. Van Valen testified to and what was depicted in the video.

Contrary to the State's insistence, the video evidence does not corroborate Sgt. Van Valen's testimony. After carefully reviewing the video evidence multiple times and listening to the testimony of Sgt. Van Valen, the trial court explicitly ruled that Sgt. Van Valen was not a credible witness in regards to his justifications for initiating a traffic stop of Tabares. In fact, the trial court determined that Sgt. Van Valen's testimony in particular about the headlights was so contrary to the

video evidence that it called into question Sgt. Van Valen's credibility in regards to the other alleged violations.

The record and the evidence supports the trial court's conclusion that Sgt. Van Valen lacked reasonable suspicion in conducting a traffic stop of Tabares. Thus, this Court should affirm the trial court's ruling granting Tabares' motion to suppress the basis of the traffic stop.

## PRAYER FOR RELIEF

Mr. Tabares prays that this Court affirm the Motion to Suppress granted by the Honorable Judge Jesus Herrera, El Paso County Criminal Court Number 4.

EL PASO COUNTY PUBLIC DEFENDER

BY:*/s/ Octavio A Dominguez*
   OCTAVIO A DOMINGUEZ
   ASSISTANT PUBLIC DEFENDER
   State Bar No. 24075582
   500 E. San Antonio, Room 501
   El Paso, Texas  79901
   odominguez@epcounty.com
   (915) 546-8185, x 3528
   Fax: 915-546-8186

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the fore-going Brief for the Appellant was sent by e-mail using the E-serve system to the District Attorney's Office, 500 E. San Antonio Room 201, El Paso, Texas 79901 and mailed to the Appellant JESUS TABARES on this the 30th day of May, 2018.


BY:*/s/ Octavio A Dominguez*
    OCTAVIO A DOMINGUEZ

## CERTIFICATE OF COMPLIANCE

Undersigned counsel herein states that the computer generated word count is 5806 and as such this document is in compliance with the Texas Rules of Appellate Procedure.


BY:*/s/ Octavio A Dominguez*
    OCTAVIO A DOMINGUEZ